# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2016-0190, <u>Virginia Eaton v. Paul Sargent</u>, the court on September 29, 2016, issued the following order:**

Having considered the brief and record submitted on appeal, we conclude that oral argument is unnecessary in this case. <u>See</u> <u>Sup. Ct. R.</u> 18(1). We reverse.

The defendant, Paul Sargent, appeals a civil stalking order of protection issued by the Circuit Court (<u>DeVries</u>, J.) in favor of the plaintiff, Virginia Eaton, who is his abutter. He argues, in part, that the evidence was insufficient to support the trial court's finding that his conduct "would cause a reasonable person to fear for . . . her personal safety or the safety of a member of [her] immediate family." RSA 633:3-a, I(a) (2016). We agree.

We review sufficiency of the evidence claims as a matter of law, viewing the evidence in the light most favorable to the plaintiff, and uphold the findings and rulings of the trial court unless they lack evidentiary support or are erroneous as a matter of law. <u>Fisher v. Minichiello</u>, 155 N.H. 188, 190 (2007).

A person commits stalking by "[p]urposely, knowingly, or recklessly engag[ing] in a course of conduct targeted at a specific person which would cause a reasonable person to fear for his or her personal safety or the safety of a member of that person's immediate family, [if] the person is actually placed in such fear." RSA 633:3-a, I(a). A "course of conduct" consists of "2 or more acts over a period of time, however short, which evidences a continuity of purpose." RSA 633:3-a, II(a) (2016). Before issuing a stalking order of protection, the trial court must make specific findings on the record that the defendant engaged in two or more such specific acts. <u>South v. McCabe</u>, 156 N.H. 797, 798 (2008). The trial court must limit its findings to the factual allegations specifically recited in the stalking petition. <u>Id.</u> at 799.

In this case, the plaintiff and defendant have lived next to each other, within 50 to 80 feet of each other, for 30 years. The defendant testified that he collects guns and has approximately 40. The defendant was distressed that the plaintiff's domestic partner put leaves and other material on his property. In May, the defendant went to the plaintiff's place of employment to discuss the issue with her. The plaintiff testified that the defendant yelled at her; the defendant denied raising his voice. No other witnesses testified. The plaintiff testified that she was "so embarrassed" and that she "guided [the defendant] out the front door."

The plaintiff testified that, six months later, as she was getting out of her car at home, the defendant called to her and she ignored him. The following day, again as she was getting out of her car at home, she did not see the defendant approach her. However, she stopped to converse with him, while he remained on his property. She testified that the defendant complained about her partner "putting leaves onto his new fence" and that she responded, "Then do what you got to do, maybe you should do that civil suit now." She did not testify that the defendant raised his voice during this encounter.

The trial court made several findings that were not supported by the evidence. It found that the defendant "approached [the plaintiff] intentionally while her domestic partner was not home, placing her in further fear for her safety and vulnerable." However, the plaintiff did not testify that her partner was not home. The defendant testified that he spoke with the plaintiff, not her partner, because he "didn't dare say anything to [her partner], because [her partner would] want to argue with [him] and fight" and the defendant wanted to avoid a confrontation. However, the defendant did not testify that he intentionally approached the plaintiff while her partner was not at home.

The trial court stated that the plaintiff testified that the "Defendant exhibited increasingly volatile aggression towards her" and found that "[h]e appears to be acting irrationally and erratically." However, the plaintiff described only two episodes, six months apart, when she conversed with the defendant. Although the plaintiff suggested that the defendant's efforts to talk to her about her partner's actions were "not quite normal . . . [because] he's waiting for [her partner] to flip out on him," she did not testify that the defendant's behavior was volatile or had escalated or that he was acting irrationally or erratically. Instead, she described the second encounter as "still the same old story."

The trial court found that the defendant "pressure[d] and harassed[ed] the Plaintiff until she feared coming home." However, the plaintiff did not testify that she feared coming home. Instead, she testified that "[t]he only thing that scare[d]" her was that the defendant "hasn't been feeling well" and "has a lot of guns, he lives next door, so if he's going to go after somebody, it ain't going to be my [partner], it's going to be me to get back at [my partner]."

The plaintiff speculated that the defendant, who testified that he has "bad" chronic obstructive pulmonary disease, "maybe . . . isn't getting enough oxygen to his brain." She testified that she "might be a little paranoid, but it seems like it's not quite normal for [the defendant] to keep coming after me, maybe he should go after my [partner]." She further testified that, when she failed to notice the defendant approaching her on his property, she thought, "This guy could blow me away and I wouldn't even know, because he just came out from nowhere." The plaintiff concluded her testimony by stating, "In his right mind, I know that [the defendant] would never hurt me or my grandchildren, but I know he isn't well and I'm just not sure what's going on with him."

2

There was no evidence that the defendant was not "[i]n his right mind." Furthermore, although the defendant owned a number of guns, there was no evidence that he had ever threatened the plaintiff with a gun or displayed a gun in any way. The facts that a neighbor owns guns and has a chronic illness would not, standing alone, "cause a reasonable person to fear for . . . her personal safety," RSA 633:3-a, I(a).

The trial court stated that it "balanc[ed] all interests" in deciding not to reconsider its final order. However, that is not the test under RSA 633:3-a, I(a). See Fisher, 155 N.H. at 193.

Upon the circumstances of this case, viewing the evidence in the light most favorable to the plaintiff, we conclude that the trial court's finding that the defendant's conduct "would cause a reasonable person to fear for . . . her personal safety or the safety of a member of [her] immediate family," RSA 633:3-a, I(a), was not supported by the evidence. In light of this conclusion, we need not address the defendant's other arguments.

<u>Reversed</u>.

Dalianis, C.J., and Hicks, Conboy, Lynn, and Bassett, JJ., concurred.


**Eileen Fox,
Clerk**

3